OPINION
{¶ 1} Defendant-appellant Rodney Glassner appeals the May 6, 2005 Judgment Entry of the Stark County Court of Common Pleas, Domestic Relations Division. Plaintiff-appellee is Elisa Glassner.
 STATEMENT OF THE FACTS AND CASE {¶ 2} The parties were married on November 16, 1991. Two children were born as issue of the marriage, namely, Joshua, born December 30, 1996, and Gianna, born March 22, 1999.
 {¶ 3} On August 15, 2003, appellee filed a complaint for divorce against appellant. On August 27, 2003, the parties filed an agreed upon Judgment Entry regarding temporary orders.
 {¶ 4} On October 6, 2003, the magistrate denied appellant's motion to modify the temporary orders. Appellant filed a motion to set aside that magistrate's order. On November 26, 2003, the magistrate modified the temporary orders and ordered appellee to pay appellant $332.74 per month for child support. Appellee again filed a motion to set aside the magistrate's order. On January 12, 2004, the trial court overruled appellee's motion to set aside the magistrate's order, adopting the same as its temporary order.
 {¶ 5} The matter proceeded to trial on April 21, 2004. At trial, appellant, who is a high school graduate and who was 44 years old and in good health at the time, testified he had been employed by Classic Pools since April 2003, and he earned $20 an hour. Since the job is a seasonal job, appellant is laid off over the winter. In 2003, appellant earned $17,102.50 and received $1,530 in unemployment compensation, for a total gross income of $18,632.50.
 {¶ 6} Before he married appellee, appellant was employed by Smucker's in Orrville part-time for six or seven months. When the parties decided to get married, they decided appellant should go back into the construction trade. Early in the parties' marriage, appellant did cement work in Ohio, Illinois, and Virginia before his son was born and he became a stay-at-home father. While working in Chicago, appellant earned approximately $34,000 a year in the cement business "because the rate was so high, * * * benefits and hourly wage in Chicago at that time was almost $40.00 an hour." Appellant testified he made $30,000 or more a year three times in his life at most and some years, he was lucky to make $20,000. When the parties moved from Chicago to Virginia in 1996, appellant took a $14-an-hour pay cut.
 {¶ 7} According to appellant, after their son was born, the parties agreed appellant would stay home and take care of the children rather than work outside the home because daycare was expensive. The parties decided it would be best for appellant to stay at home since his income was less than appellee's and so that appellee could travel for work. From 2000 through 2002, the parties lived in Detroit, Michigan, and then moved back to Ohio in 2002. After the parties moved to Michigan, appellant was the primary caregiver for the children and took the children to preschool and doctor appointments, cooked, cleaned, did laundry, and attended parent-teacher conferences.
 {¶ 8} At trial, appellee testified she was 36 years old, in good health, and had received a Master of Business Administration ("MBA") degree in 2002 from Michigan State. Appellee, who had received her Bachelor of Arts ("BA") degree prior to her marriage to appellant, testified her MBA degree was paid for entirely by Ford Motor Company, her employer. As of the date of the trial, appellee had been employed by Ford Motor Company for approximately 15 years and was employed as a sales zone manager. In 2003, appellee earned $90,825.33 through her employment with Ford. Appellee was required to relocate frequently in order to advance at Ford. Appellant testified every time they moved appellee got a promotion and she "never wanted to turn down a move."
 {¶ 9} At trial, appellant presented a statement showing his monthly expenses were $4,145, and appellee submitted a statement showing her monthly expenses were $5,338.
 {¶ 10} The trial court rendered its decision on April 28, 2004. Appellant filed an appeal to this Court assigning as error: 1. The trial court abused its discretion in failing to award appellant child support; and 2. The trial court abused its discretion in failing to award appellant the appropriate amount of spousal support. On April 18, 2005, this Court reversed and remanded the trial court's decision sustaining both of the appellant's assignments of error, stating:
 {¶ 11} "* * * we concur with appellant that the fact that appellant and appellee equally share time with the children does not in and of itself justify a deviation to "0" of the child-support-guideline amount. As is stated above, there is a great disparity between the parties' income, with appellant earning $18,632 in 2003 and appellee earning $90,825. In consideration of such disparity and in view of the fact that there is nothing in the shared-parenting plan placing the burden of any unusual or extraordinary parenting expenses on appellee,[4]
it was an abuse of discretion for the trial court to decline to award child support to appellant.
 {¶ 12} "FN4. As is stated above, the trial court, in its entry, noted that the parties, in their shared-parenting plan, agreed to equally share "related expenses."
 {¶ 13} "Based on the foregoing, appellant's first assignment of error is sustained.
 {¶ 14} "* * *
 {¶ 15} "Appellant, in his second assignment of error, argues that the trial court abused its discretion in failing to award appellant the appropriate amount of spousal support. Appellee, in her sole assignment of error on cross-appeal, argues that if this court remands this matter with respect to the trial court's child support award, it must also remand this matter with respect to the trial court's spousal support award. We agree.
 {¶ 16} "As noted by appellee in her brief, the trial court's award of $1,800 a month in spousal support to appellant was based, in part, on the trial court's decision not to require appellee to pay child support to appellant. Child support, as a "court-ordered payment," is a relevant factor in determining spousal support. R.C. 3105.18(C)(1)(i). For that reason, based on our decision to remand this matter with respect to child support, the trial court must also reconsider, on remand, its award of spousal support to appellant."
 {¶ 17} Glassner v. Glassner (2005), 160 Ohio App.3d 648.
 {¶ 18} On remand, the trial court issued a new Judgment Entry on May 6, 2005, finding appellee obligated to pay appellant spousal support in the sum of $1,600 per month, and finding appellee obligated to pay child support in the amount of $222.36 per month. Appellant now appeals the May 6, 2005 Judgment Entry, assigning as error:
 {¶ 19} "I. THE TRIAL COURT ABUSED ITS DISCRETION AND/OR VIOLATED THE LAW OF THE CASE DOCTRINE IN RECALCULATING CHILD SUPPORT.
 {¶ 20} "II. THE TRIAL COURT ABUSED ITS DISCRETION AND/OR VIOLATED THE LAW OF THE CASE DOCTRINE IN DETERMINING THE AMOUNT EACH PARTY SHALL PAY FOR OUT-OF-POCKET MEDICAL EXPENSES FOR THE CHILDREN.
 {¶ 21} "III. THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO AWARD THE APPROPRIATE AMOUNT OF SPOUSAL SUPPORT TO APPELLANT.
 {¶ 22} "IV. THE TRIAL COURT ABUSED ITS DISCRETION IN ORDERING APPELLEE TO TAKE THE CHILDREN AS DEPENDENTS FOR INCOME TAX PURPOSES."
 {¶ 23} Initially, we note decisions regarding support obligations are within the discretion of the trial court and will not be disturbed without an abuse of discretion. Rock v. Cabral
(1993), 67 Ohio St.3d 108, 616 N.E.2d 218, syllabus. An abuse of discretion is more than an error of law or judgment, but rather, it is a finding that the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140. Under this standard of review, an appellate court may not merely substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd.
(1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748.
 I {¶ 24} In the first assignment of error, appellant argues the trial court abused its discretion in calculating appellee's child support obligation. Specifically, appellant maintains the trial court's reliance on a new child support worksheet reflecting a different amount than the worksheet utilized prior to his first appeal to this Court violates the law of the case doctrine. Appellant notes the trial court attached a completed worksheet to its first judgment entered on April 28, 2004, finding appellee's support obligation to be $630.52 per month. However, the trial court declined to award appellant child support in that first order. Appellant further notes neither party objected at trial or assigned as error in the first appeal the calculations performed in the first worksheet. Appellant additionally maintains the trial court failed to explain its reasons for deviating from the guideline amount in utilizing the new worksheet.
 {¶ 25} Upon review, we agree with appellee appellant's reliance on the law of the case doctrine is misplaced as the trial court completed the "new" worksheet in accordance with this Court's order of remand. As cited above, this Court's April 18, 2005 Memorandum Opinion states:
 {¶ 26} "* * * we concur with appellant that the fact that appellant and appellee equally share time with the children does not in and of itself justify a deviation to "0" of the child-support-guideline amount. As is stated above, there is a great disparity between the parties' income, with appellant earning $18,632 in 2003 and appellant earning $90,825. In consideration of such disparity and in view of the fact that there is nothing in the shared-parenting plan placing the burden of any unusual or extraordinary parenting expenses on appellee,[4] it was an abuse of discretion for the trial court to decline to award child support to appellant.
 {¶ 27} "FN4. As is stated above, the trial court, in its entry, noted that the parties, in their shared-parenting plan, agreed to equally share "related expenses."
 {¶ 28} "Based on the foregoing, appellant's first assignment of error is sustained.
 {¶ 29} "* * *
 {¶ 30} "Appellant, in his second assignment of error, argues that the trial court abused its discretion in failing to award appellant the appropriate amount of spousal support. Appellee, in her sole assignment of error on cross-appeal, argues that if this court remands this matter with respect to the trial court's child support award, it must also remand this matter with respect to the trial court's spousal support award. We agree.
 {¶ 31} "As noted by appellee in her brief, the trial court's award of $1,800 a month in spousal support to appellant was based, in part, on the trial court's decision not to require appellee to pay child support to appellant. Child support, as a "court-ordered payment," is a relevant factor in determining spousal support. R.C. 3105.18(C)(1)(i). For that reason, based on our decision to remand this matter with respect to child support, the trial court must also reconsider, on remand, its award of spousal support to appellant."
 {¶ 32} As clearly set forth above, this Court mandated, upon remand, the trial court reconsider both the child and spousal support awards in accordance with App.R. 12(D). Accordingly, the trial court did not violate the law of the case or abuse its discretion by preparing a new child support worksheet.
 {¶ 33} Appellant's first assignment of error is overruled.
 II {¶ 34} In the second assignment of error, appellant argues the trial court abused its discretion in allocating the percentage of out-of-pocket medical expenses for the parties' children for the first time in its May 6, 2005 Judgment Entry.
 {¶ 35} The May 6, 2005 Judgment Entry finds appellant should bear 35% of the out-of-pocket medical expenses for the children, while appellee is responsible for 65% of these expenses. In doing so, appellant maintains the trial court relied on different income figures than considered in its first opinion. Again, appellant asserts the trial court violated the law of the case doctrine.
 {¶ 36} We find the trial court did not violate the law of the case or abuse its discretion in attributing the out-of-pocket medical expenses. The parties "Shared Parenting Plan" agreed the out-of-pocket medical expenses "shall be divided and paid by the parents in the percentages set forth in the Child Support Worksheet adopted by the Court." As indicated in our discussion of appellant's first assignment of error, the worksheet adopted by the trial court following this Court's remand determined appellant's and appellee's percentage of income was 35% and 65% respectively.
 {¶ 37} The second assignment of error is overruled.
 III {¶ 38} In the third assignment of error, appellant maintains the trial court's award of spousal support was inappropriate. Specifically, appellant asserts the trial court's reduction of appellant's spousal support constitutes an abuse of discretion given the vast disparity in the parties' incomes.
 {¶ 39} R.C. Section 3105.18 states, in pertinent part:
 {¶ 40} "(C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
 {¶ 41} "(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
 {¶ 42} "(b) The relative earning abilities of the parties;
 {¶ 43} "(c) The ages and the physical, mental, and emotional conditions of the parties;
 {¶ 44} "(d) The retirement benefits of the parties;
 {¶ 45} "(e) The duration of the marriage;
 {¶ 46} "(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 {¶ 47} "(g) The standard of living of the parties established during the marriage;
 {¶ 48} "(h) The relative extent of education of the parties;
 {¶ 49} "(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 {¶ 50} "(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 {¶ 51} "(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 {¶ 52} "(l) The tax consequences, for each party, of an award of spousal support;
 {¶ 53} "(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 {¶ 54} "(n) Any other factor that the court expressly finds to be relevant and equitable."
 {¶ 55} R.C. § 3105.18.
 {¶ 56} Upon review, the trial court's May 6, 2005 Judgment Entry indicates the court "considered all of the spousal support factors and finds that spousal support is appropriate and reasonable. Section 3105.18(C)(1)." The trial court's Judgment Entry, in its findings, states:
 {¶ 57} "11. Each party presented a monthly expense statement. The husband's expenses are 4,145, and the wife's expenses are $5,338."
 {¶ 58} The trial court properly considered the parties' respective incomes and expenses in view of R.C. 3105.18(C)(1). The trial court considered the totality of the circumstances in fashioning the spousal support award, including appellant's being 44 years old and in good physical, mental and emotional health, his marketable skills, and his pension plans. Accordingly, we do not find the trial court was unreasonable, arbitrary or unconscionable in awarding appellant spousal support.
 {¶ 59} Appellant's third assignment of error is overruled.
 IV {¶ 60} In the final assignment of error, appellant claims the trial court abused its discretion in allocating the dependency tax exemption to appellee. The May 6, 2005 Judgment Entry states:
 {¶ 61} "The mother shall take the children as dependents for income tax purposes if all child support payments are current for the previous years as of January 31.
 {¶ 62} "In determining whether taxes would be saved by allocating the federal tax dependency exemption to the non-custodial parent, the Court has reviewed all pertinent factors, including the parents' gross incomes, the exemptions and deductions to which the parents are otherwise entitled, and the relevant federal, state and local taxes rates."
 {¶ 63} Appellant maintains the trial court abused its discretion in failing to support its conclusion with findings of fact. We disagree. The parties' Shared Parenting Plan, reviewed and adopted in the trial court's decree, indicates the parties agreed to the allocation of the income tax exemption. The plan provides "Commencing in tax year 2004 [Appellee] shall claim the parties' children as dependants upon her income tax returns each year." Accordingly, we do not find the trial court abused its discretion in allocating the dependency tax exemption.
 {¶ 64} Appellant's fourth assignment of error is overruled.
 {¶ 65} The May 6, 2005 Judgment Entry of the Stark County Court of Common Pleas, Domestic Relations Division, is affirmed.
Hoffman, J., Wise, P.J. and Gwin, J. concur.
[4] As is stated above, the trial court, in its entry, noted that the parties, in their shared-parenting plan, agreed to equally share "related expenses."
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas, Domestic Relations Division, is affirmed. Costs assessed to appellant.